LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* MARY CONNER, Administratrix, *et al.*

1. RAILROAD. *Contributory negligence. Damages.* In a suit for damages against a railroad company for loss of life occasioned by one of its trains, the condition and conduct, the carelessness, recklessness, and the imprudence of the deceased may be considered by the jury in assessing direct pecuniary damages resulting to the party from the injury.

Cases cited and qualified: L. & N. R. R. Co. *v.* Robinson, 9 Heis., 276; L. & N. R. R. Co. *v.* Burke, 6 Cold., 51; Smith *v.* N. & C. R. R. Co., 6 Cold., 592; Prince *v.* N. & C. R. R. Co., 2 Heis., 587; N. & C. R. R. Co. *v.* Carrol, 6 Heis., 347; Code, § 1166, Sub. Sec. 5.

Louisville & Nashville Railroad Co. *v.* Mary Connor, Adm'x, *et al.*

2. CASE OVERRULED. So much of the case of the L. & N. R. R. Co. *v.* Burke is overruled as applies to the right of an administrator of a person instantly killed, to sue for the use of the wife and children of the deceased, but the overruling is expressly confined to that single point.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court. EUGENE CARY, Judge.

GUILD & SMITH and EAST & SPURLOCK for the Company.

W. G. & JOHN D. BRIEN and JOHN C. GAUT for Mary Conner.

NICHOLSON, C. J., delivered the opinion of the Court.

Mary Conner, administratrix, etc., instituted this suit in 1866, in the Davidson County Circuit Court, against the L. & N. R. R. Co., to recover damages for carelessly and negligently running their cars, locomotives, etc., over and killing Michael Conner, her husband.

Upon the trial of the cause the jury found a verdict in favor of the plaintiff for $4,000. The defendants have appealed.

A general statement of the facts of the case will be sufficient to present the questions of law involved:

It appears that in July, 1864, Michael Conner was killed by an engine running over him, as it

was backing from the depot of the L. & N. R. R. Co., in Nashville, to the round-house, in Edgefield. He was killed instantly, on the L. & N. R. R., about 60 or 70 yards from the White's Creek Turnpike bridge, and on the north side of the bridge. Two witnesses say they first saw Conner on the Nashville side of the Cumberland river. Showing his pass to the pickets, he passed on in advance of witnesses, some 60 or 70 steps. If he was drinking witnesses did not notice it. They did not hear the bell or whistle until after the engine passed over Conner's body. They did not see him stagger; they were walking behind him, 40 or 50 yards, looking at him, and if he had staggered, they would have seen it. Had known him seven or eight years, and never saw him drunk. The railroad bridge was the only way for passengers, at the time, either on foot or in vehicles. Witnesses did not hear the engine coming until it was almost on them. It was going very rapidly, as fast as a fast horse could run. An engine running rapidly might be heard for a mile, yet they did not hear it. It might have been on account of the rattling of the wagons on the square in Nashville. The engine went on to the round-house. Conner lived beyond the round-house, about 90 yards. He was a hard-working, industrious man, and supported his family.

Defendants introduced three witnesses, who proved that Conner was very drunk when he came from Nashville; was drunk when he went there. When

he returned, he came on the .side of the track; staggering along, and staggered from one side of the road to the other. When the engine was coming over from Nashville, they blew the whistle and rang the bell, and at the time the engine was approaching him, he was on the side track, and staggered on to the main track, just as the engine was passing, and was run over. At the time of the accident, witnesses were not more than five or six rods from where it occurred.

Three other witnesses proved that Conner was a habitual drunkard—did not work or do any thing for the support of his family. Other witnesses proved that Conner had some property, and traded in cattle.

The first error relied on is based on that portion of the charge of the Court, in which it was assumed that Section 1166, Sub. Sec. 5, of the Code, was intended to be applicable to the movement of a locomotive or engine, about the depot, when detached from a train of cars, or from a depot to the engine-house in the vicinity. This question arose in the case of the *Louisville and Nashville R. R. Co.* v. *Robinson,* decided at Jackson, in which case an employee of the company was killed in the yard of the Company, by the backing of an engine into the engine-house. It was held that as between the Company and one of its employees, engaged in his duties in the yard, the

25—vol. 2.

Louisville & Nashville Railroad Co. *v.* Mary Conner, Adm'x, *et al.*

provisions of the Section referred to were not intended to be applicable, but as between the Company and a stranger, so killed, no decision was made. Nor do the facts in proof here raise the question which has been argued.

It is not shown that this accident occurred within the yard of the Company; nor indeed, does the proof inform us where the depot of the Company was, or how far from the round-house the accident occurred. The localities are so imperfectly stated that we can not assume that the accident occurred within the yard of the Company, or that the engine was backed into the round-house to be left there; for one witness speaks of its having made at least one trip from and to Nashville from the time Conner went into Nashville until his return. On this question, therefore, in the absence of more satisfactory proof, we can not undertake to determine, but presume that the Circuit Judge was correct in his application of the provisions of Sec. 1166 to the facts of the case.

It is next insisted that the Circuit Judge erred in his instructions to the jury on the subject of contributory negligence. The Court was asked to charge the jury that if the deceased came to his death by or through his own carelessness, or even if his own carelessness conjoined with that of the Company, and this accident the result, that then the plaintiff could not recover. He responded that but for the provisions of our Statutes, as they now stand, he would feel it his duty to instruct the jury to inquire as to

Louisville & Nashville Railroad Co. *v.* Mary Conner, Adm'x. *et al.*

how far the carelessness, or imprudence, or condition of the deceased contributed to the fatal result.

"But the law, as it now stands, says that the Company shall be responsible for all damages to person or property, occasioned by or resulting from any accident or collision that may occur, when the precaution prescribed shall not have been observed."

And further: "If you shall find the issues for the plaintiff, you will then proceed to assess the damages, and will return a verdict for such sum as you shall deem just and proper under all the circumstances of the case as proved, (not exceeding the amount sued for), and considering the character of the deceased, his habits and situation in life, his age and the relations which he sustained to this plaintiff and her children, as husband and father."

And again: "You may look to the conduct of the Company's agents at the time of the accident, to see whether there was connected with it any circumstances of aggravation, etc., with the view of assessing exemplary damages. And when considering this question of exemplary damages, it would be proper for the jury to take into consideration the condition of the deceased at the time of the accident, and as to how far his condition and conduct, his carelessness, recklessness and imprudence contributed to the result. But remember you are not to consider these facts in fixing the liability of the Company, or in assessing the direct pecuniary damages resulting to the party from the injury sustained, for as to them

the Statute makes the Company fully liable, when liable at all."

This charge, so far as it holds that the condition and conduct, the carelessness, recklessness and imprudence of the deceased, are not to be considered by the jury in assessing the direct pecuniary damages resulting to the party from the injury, was erroneous. It was held in the case of the *Louisville and Nashville R. R. Co.* v. *Burke,* 6 Cold., 51, that the "negligence of the person injured, which caused or contributed to cause the accident or collision, or without which the accident or collision would not have occurred, may be taken into consideration by the jury in determining the amount of the damages proper to be given for the injury. Such construction the clauses of the Code will bear, and must be given."

It is true, that in the case of *Smith* v. *Nashville and Chattanooga R. R. Co.,* 6 Cold., 592, the Court seem to have placed a different construction upon the Sections of the Code construed in the case of the *Louisville and Nashville R. R. Co.* v. *Burke.* But we can not concur in the construction of these Sections, so far as it conflicts with that of the case of the *Louisville and Nashville R. R. Co.* v. *Burke.*

In the case of *Prince* v. *Nashville and Chattanooga R. R. Co.,* 2 Heis., 587, this Court overruled so much of the case of the *Louisville and Nashville R. R. Co.* v. *Burke* as related to the right of an administrator of a person instantly killed to sue for the

Louisville & Nashville Railroad Co. *v.* Mary Conner, Adm'x, *et al.*

use of the wife and children of the deceased, but the overruling was expressly confined to that single point.

In the case of the *Nashville and Chattanooga R. R. Co.* v. *Carroll,* not yet published, delivered at Knoxville, this question was elaborately examined, and the rule adhered to, that if the injury was the result of the negligence of the deceased, or if he could have avoided the injury by ordinary care, the jury might look to these facts in assessing the damages.

It follows that for the error indicated the judgment is reversed.